## J. L. POWERS *v.* W. E. HUBBELL—TURNBULL & Co., Intervenors.

The keeper of a livery stable has no privilege by law upon carriages and horses kept in his stable.
When the vendee of a carriage covenanted with his vendor not to sell it to the prejudice of his vendor's right, and a subsequent purchaser assumed the payment of the price and received possession from the original vendor : *Held*, that the vendors privilege still existed.

APPEAL from the Sixth District Court of New Orleans, *Cotton*, J.
    *J. J. Michel*, for plaintiff. *Semmes & Edwards* and *Budd & Lambert*, for intervenors and appellants.

MERRICK, C. J. This case presents the question, whether the keeper of a livery stable has a privilege upon the carriage and horses kept by him, and, if so, whether it is superior to that of the vendor of the carriage.

The plaintiff's counsel contends, that the privilege of the keeper of the livery stable for the keeping of the horses and the storage of the carriage is that of

the lessor, and he cites the Articles 3185, 3223, 3224, 3225 of the Civil Code, and 5 An. p. 718, in support of this position.

The lessor, under the contract of letting and hiring, parts with the occupancy of the real estate, and the same goes into the occupation of the lessee.

Here the possession of the livery stable is in the keeper, who has never parted with the possession. The hack driver who takes his horses and carriage to the livery stable for keeping, has himself possession of no part of the building, and the reward which the owner exacts for such keeping is not rent of the stable.

The Articles of the Code cited do not confer upon the plaintiff a privilege, and we are not aware of any other Articles of the Code which gives the keeper of a livery stable a privilege upon the carriage sent there with the horses to be kept. Whether he has a privilege for preserving the horses by feeding them, it is not necessary to decide. The plaintiff contends that the intervenors have lost their privilege upon the carriage, because they sold it first to one *Madden*, who afterwards sold it to the defendant, and, therefore, the intervenors have, under Article 3194, lost their privilege.

We think the intervenors have not lost their privilege. *Madden*, in a written contract, covenanted not to convey the carriage to the prejudice of the rights of the intervenors.

Before the sale to the defendant, in pursuance of *Madden's* contract, the carriage was delivered to the intervenors, from whom the defendant received it. He, moreover, agreed by an entry on *Madden's* contract, to all the conditions of the sale to *Madden*, and assumed the payment of his notes to the intervenors, at the time they delivered him the carriage.

Thus, *Hubbell* placed himself in *Madden's* shoes as purchaser, and, as a consequence, the property was still bound for the payment of the vendor. The vendors had not allowed the carriage to be sold without making their claim and obliging the new vendee to receive possession of them, and to assume to them the payment of the price. As against the plaintiffs who had no privilege at all it must be held that the defendant stands in the relation of a vendee to the intervenors, and not having paid the price their privilege must be recognized.

It is, therefore, ordered, adjudged and decreed by the court, that the judgment of the lower court, upon said demand in intervention, be avoided and reversed, that the vendors' privilege in their favor be recognized upon the proceeds of said carriage and harness, for the payment of said sum of five hundred and eighty-five dollars and interest, as set forth in their petition of intervention, and it is further ordered, that the proceeds of said carriage and harness, after deducting the costs of sale, viz: the sum of five hundred and sixty-one dollars and sixty-five cents, be paid over to the said intervenors, in part satisfaction of the vendors' privilege, and that said plaintiff, *James S. Powers*, pay the costs of the appeal and the cost of the intervention in the lower court.